MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
BY:    ARTHUR W. LEFCO, ESQUIRE                    Attorneys for Defendants,
Attorney I.D. No. 12909                                      Global Spectrum, Inc. and
BY:    ALESIA S. SULOCK, ESQUIRE                  Michael Scanlon
Attorney I.D. No. 314071
2000 Market Street
Philadelphia, PA 19103
215-575-2600

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| T.I.B.C. PARTNERS, LP  et al | : | |
| | : | |
| | : | Civil Action No. 2:14-cv-03697-EL |
| v. | : | |
| | : | |
| THE CITY OF CHESTER, et al | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, GLOBAL SPECTRUM, INC. AND MICHAEL SCANLON'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), OR ALTERNATIVELY, MOTION FOR A MORE DEFINITE STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(e)**

**I.      MATTER BEFORE THE COURT**

Before the Court is the Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or alternatively, Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e) of Defendants, Global Spectrum, Inc. ("Global") and Michael Scanlon ("Scanlon" and, collectively, "Moving Defendants").  Moving Defendants respectfully request that this Honorable Court grant their Motion to Dismiss pursuant to Rule 12(b)(6) because Plaintiffs have failed to state a claim for relief in that Plaintiffs have not alleged facts as to Moving Defendants which, even if true, give rise to their causes of action.  Alternatively, Moving Defendants respectfully request that this Honorable Court grant their Motion for a More

1

Definite Statement pursuant to Rule 12(e) because Plaintiffs have failed to specifically plead

Moving Defendants' involvement in the conduct which allegedly gives rise to their claims.

## II.   STATEMENT OF QUESTIONS INVOLVED

1. Are Moving Defendants immune from liability on Plaintiffs' claims pursuant to the *Noerr-Pennington* doctrine?

   Suggested Answer:  Yes.

2. Should Plaintiffs' RICO claim be dismissed as to Moving Defendants because Plaintiffs have failed to allege facts which, if true, establish that Moving Defendants committed any predicate acts or participated in a pattern of racketeering activity?

   Suggested Answer:  Yes.

3. Should Plaintiffs' civil rights claim pursuant to Section 1983 be dismissed as to Moving Defendants because Plaintiffs have failed to allege facts which, if true, establish that Moving Defendants are state actors or engaged in any conduct that violated Plaintiffs' civil rights?

   Suggested Answer:  Yes.

4. Should Plaintiffs' state law claims be dismissed as to Moving Defendants because Plaintiffs have failed to allege facts which, if true, establish any of the elements of civil conspiracy, fraud, trespass or intentional interference with contractual relations?

   Suggested Answer:  Yes.

5. Alternatively, should Plaintiffs be required to make a more definite statement as to the alleged conduct of Moving Defendants which they aver gives rise to their claims?

   Suggested Answer:  Yes.

## III.   FACTUAL BACKGROUND[1]

Plaintiffs, T.I.B.C. Partners, LP, T.I.B.C. Depot Partners, LP, T.I.B. Partners, LP, and

T.I.B.C. Bay Partners, LP (collectively, "TIBC" or "Plaintiffs") commenced this action by filing

a Complaint on June 16, 2014.  A true and correct copy of Plaintiffs' Complaint is attached

hereto as Exhibit "A."  Therein, Plaintiffs make allegations against Moving Defendants, as well

---

[1] These facts are drawn from Plaintiffs' Complaint and, for the purposes of this motion only, are deemed to be true and correct.

as the City of Chester ("the City"); the Mayor of Chester, John A. Linder ("Mayor Linder"); the Police Commissioner of Chester, Joseph Bail, Jr. ("Commissioner Bail"); Keystone Sports and Entertainments, LLC, ("Keystone"),  FC Pennsylvania Stadium LLC ("PA Stadium"), Pennsylvania Professional Soccer LLC ("PA Soccer"), and one Keystone employee, David P. Debusschere ("Debusschere" and collectively, the "Keystone Defendants").  *See* Exhibit A.  The Keystone Defendants collectively operate the Philadelphia Union professional soccer club (the "Union") and PPL Park, where the Union plays.  *See* ¶ 11 of Exhibit A.  Global provides management services in general and specifically manages PPL Park.  *See* ¶ 13 of Exhibit A.

In their Complaint, Plaintiffs allege various federal and state law claims arising from disputes over the operation of parking lots owned by Plaintiffs near PPL Park.  *See* Exhibit A. Specifically, Plaintiffs allege that Global paid Commissioner Bail as a W-2 employee for Commissioner Bail's work at PPL Park during events held there, and that Commissioner Bail's actions in accepting employment by Global violated the law.  *See* ¶¶ 27, 60, 63 of Exhibit A. Plaintiffs further allege that Global and Scanlon, along with the Keystone Defendants, directed Commissioner Bail and Mayor Linden to cause a Notice of Violation to be issued against Plaintiffs on April 26, 2012, for use of the lots in a way that posed a danger to public safety.  *See* ¶¶  26, 28 of Exhibit A.  Plaintiffs allege that Global and Scanlon later expressly directed Commissioner Bail and Mayor Linden to cause the City to issue a Second Notice of Violation on June 7, 2012 for use of the lots in violation of the City's Zoning Ordinance.  *See* ¶ 37 of Exhibit A.

Plaintiffs commenced a Declaratory Judgment action in the Court of Common Pleas of Delaware County in October, 2012, seeking a determination that based on their prior non-conforming use, Plaintiffs had a right to use their lots for parking without interference by the

Chester City Police Department.  *See* ¶ 43 of Exhibit A.  While the Declaratory Judgment action was pending, Plaintiffs allege that on March 2, March 16, April 13 and May 4, 2013, Global caused Commissioner Bail to use members of the Chester City Police Force to close Plaintiffs' parking lots, and Scanlon personally barricaded the lots.  *See* ¶ 46 of Exhibit A.  Plaintiffs then allege that Debusschere, in furtherance of a conspiracy with Global, Scanlon and the other Defendants, sent two letters to Commissioner Bail and Mayor Linden regarding the parking situations.  *See* ¶¶ 47-48 of Exhibit A.  Finally, Plaintiffs allege that after an Order was entered barring interference with Plaintiffs' lots, on March 15, 2014, Commissioner Bail, as an employee of Global, barricaded all exits of Plaintiffs' lots.  *See* ¶ 56 of Exhibit A.

Essentially, Plaintiffs' only factual allegations against Moving Defendants are that, by paying Commissioner Bail as a W-2 employee, Moving Defendants participated in prohibiting Plaintiffs from operating parking lots near PPL Park during Union soccer games, and that Scanlon barricaded Plaintiffs' lot(s) on at least one occasion.  *See* Exhibit A.[2]  Plaintiffs allege that this conduct gives rise to the following causes of action:  (1) a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) a civil rights claim under 42 U.S.C. § 1983; (3) a civil rights attorneys' fee award under 42 U.S.C. § 1988; (4) a state law claim for civil conspiracy; (5) a state law claim for fraud; (6) a state law claim for trespass; and (7) a state law claim for intentional interference with contractual relations.  *See* Exhibit A.  Plaintiffs seek, from Moving Defendants, compensatory damages in an amount of $145,000; counsel fees from the state court actions in an amount of $76,000; management fees for 2013 and 2014 in an amount of $82,500.00; punitive damages; treble damages under RICO; and attorneys' fees.  *See* ¶ 118 of Exhibit A.

---

[2] While Plaintiffs generally allege that Moving Defendants directed Commissioner Bail and Mayor Linden to issue violation notices, there is no allegation that the Police Commissioner or the Mayor has either the power or the responsibility to do so.  In fact, the Notices of Violation were issued by the City Planner.

## IV.   ARGUMENT

### A. Standard of Review

A Rule 12(b)(6) motion to dismiss should be granted when a plaintiff's complaint fails to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Under the Federal Rules of Civil Procedure, a party may file a motion to dismiss on the basis of the failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6) (2009).  In considering a 12(b)(6) motion, the court assumes that all factual allegations contained in the complaint are true, and determines whether those allegations "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Santiago v. Warminster Twp, 629 F.3d 121, 128 (3d Cir. 2010) (citation omitted).

Determining the sufficiency of a plaintiff's complaint is a three step process.  First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130. Second, "the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" Id.  Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.  Although the complaint need not contain detailed factual allegations, a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal,

556 U.S. at 678.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.

A Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e) should be granted when a plaintiff's claim is so vague or ambiguous that the defendant cannot reasonably prepare a response.  Fed. R. Civ. P. 12(e) (2009).

## B. Liability Cannot be Imposed on Moving Defendants for the Conduct Alleged, Pursuant to the *Noerr-Pennington* Doctrine.

Pursuant to the *Noerr-Pennington* doctrine, liability cannot be imposed on Moving Defendants for the conduct alleged by Plaintiffs.  Under the *Noerr-Pennington* doctrine, "liability cannot be imposed for damage caused by inducing legislative, administrative, or judicial action."  Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 160 (3d Cir. 1988).  The *Noerr-Pennington* doctrine provides immunity from liability when a party petitions the government for redress of grievances.  Ocane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1757 (2014).

The *Noerr-Pennington* doctrine is a settled tenet of federal law which was originally derived nearly fifty years ago from the seminal Supreme Court cases, Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) and United Mine Workers v. Pennington, 381 U.S. 657 (1965).  The *Noerr-Pennington* doctrine says that "an individual is immune from liability for exercising his or her First Amendment right to petition the government."  Barnes Foundation v. Township of Lower Merion, 242 F.3d 151, 159 (3d Cir. 2001).  *Noerr-Pennington* immunity applies "regardless of the defendants' motivations . . . the right of individuals to petition the government 'cannot properly be made to depend on their intent in doing so.'"  Id.; but see Ocane Fitness, LLC, 134 S. Ct. at 1757 (the sham exception to the *Noerr-Pennington* doctrine means that immunity does not apply where "activity 'ostensibly

directed toward influencing governmental action' . . . 'is a mere sham to cover . . . an attempt to interfere directly with the business relationships of a competitor'").  In order to fall under the sham exception, the defendant's conduct must have been "baseless" and must "conceal an attempt to interfere directly with the business relationships of a competitor."  Id.

Although the *Noerr-Pennington* doctrine was initially formulated in the context of antitrust litigation, it has since expanded to other forms of government petitioning, and now provides immunity in the context of civil conspiracy claims, civil rights claims, and zoning disputes.  *See* Id. at 160-61(citing NAACP v. Claiborne Hardware Co., 458 U.S. 886 (1982 (applying *Noerr-Pennington* doctrine in civil conspiracy context); Stevens v. Tillman, 855 F.2d 394, 404-05 (7th Cir. 1988) (noting applicability of *Noerr-Pennington* doctrine as defense to plaintiff's civil rights action); Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 614-15 (8th Cir. 1980) (holding private citizen immune from section 1983 liability in zoning dispute); see also Sosa v. DIRECTV, Inc., 437 F.3d 923 (9th Cir. 2006) (applying *Noerr-Pennington* doctrine to bar RICO claim.

Here, Plaintiffs allege that Moving Defendants in some way caused a Cease and Desist Order to be issued against Plaintiffs, caused a Notice of Violation to be issued against Plaintiffs, and caused a Second Notice of Violation to be issued against Plaintiffs, all due to their improper use of their lots for parking.  *See* ¶¶ 27, 28, and 37 of Exhibit A.  Plaintiffs do not allege how Moving Defendants caused these orders and violations to issue.  *See* Id.  Plaintiffs further allege that Moving Defendants caused Commissioner Bail to close Plaintiffs' parking lots on several occasions.  *See* ¶ 46 of Exhibit A.  Even if Plaintiffs adequately pled these allegations, which they have not, the conduct alleged does not give rise to liability because, at most, Moving Defendants simply petitioned the government to redress grievances, a First Amendment right

which is protected by law.  Moving Defendants have every right to petition the government to address Plaintiffs' illegal use of their parking lots.  Plaintiffs do not allege facts sufficient to invoke the sham exception, because Plaintiffs allege neither that Moving Defendants are a competitor of Plaintiffs nor that the action of Moving Defendants was "baseless."  *See* Exhibit A. In fact, it is apparent that, if Moving Defendants did in some way seek to cause the government's conduct as alleged, their actions in doing so were not baseless because actual violations were found and notices and cease and desist orders were issued.  *See* ¶¶ 27, 28, and 37 of Exhibit A.

Finally, the *Noerr-Pennington* doctrine has specifically been held to apply to cases such as this, where claims such as civil conspiracy, civil rights, zoning disputes, and RICO claims are at issue.  Barnes Foundation, 242 F.3d at 159 (citations omitted); *see also* Sosa, 437 F.3d 923. Under *Noerr-Pennington*, defendants such as Moving Defendants cannot be held liable for petitioning the government.  Because *Noerr-Pennington* immunized Moving Defendants from liability for the conduct alleged by Plaintiffs,  Plaintiffs' claims against Moving Defendants fail.

## C.  Plaintiffs Have Failed to Plead Sufficient Factual Allegations against Moving Defendants to Give Rise to a Claim for Relief under RICO.

Plaintiffs have failed to plead sufficient factual allegations against Moving Defendants to give rise to a claim for relief under RICO.  Plaintiffs allege that Moving Defendants, along with all other Defendants, have violated Section 1962(c) of the RICO Act.  Section 1962(c) of provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) (1988).  Because Plaintiffs have not adequately alleged that any conduct of Moving Defendants violates RICO, this claim fails.

### 1. The Elements of RICO Generally.

To establish a civil RICO claim, a plaintiff must prove that a person: (1) conducted (2) an enterprise (3) through a pattern (4) of racketeering activity. Brock v. Thomas, No. 10-687, 2014 U.S. Dist. Lexis 70930, *46 (E.D. Pa. 2014) (citing In re Brokerage Antitrust Litig., 618 F.3d 300, 362-63 (3d Cir. 2010)).

An enterprise is either an organization such as a corporation, partnership or other legal entity or any union or group of individuals associated in fact although not a legal entity. United States v. Turkette, 452 U.S. 576, 581-82 (1981).

A pattern of racketeering activity requires the commission of at least two predicate acts within the span of 10 years. 18 U.S.C. § 1961(5) (2013). Predicate acts are statutorily defined, and are limited to certain identified state and federal crimes, including bribery, mail and wire fraud. § 1961(1) (2013). "[A] pattern requires more than commission of the requisite number of predicate acts." Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1412 (3d Cir. 1991). Rather, the plaintiff must show "that the racketeering acts are related, *and* that they amount to or pose a threat of continued criminal activity." Id. (citing H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989)). Thus, a pattern requires both "relatedness" and "continuity." Id. The test for relatedness "focuses on whether the alleged predicate acts 'are interrelated by distinguishing characteristics and are not isolated events.'" Id. (citing H.J. Inc., 492 U.S. 229). Continuity, on the other hand, refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. "A short-term scheme threatening no future criminal activity will not suffice." Id.

## 2.  The Predicate Acts.

Here, Plaintiffs allege that the predicate acts consisted of: racketeering activity under section 1961(1)(A) in the form of state law bribery,[3] and racketeering activity under section 1961(1)(B) in the form of bribery under 18 U.S.C. § 201, mail fraud under 18 U.S.C. § 1341, and wire fraud under 18 U.S.C. § 1343.  *See* ¶ 85 of Exhibit A.

First, Plaintiffs do not, in this Count, allege that Moving Defendants violated the Pennsylvania statute pertaining to bribery.  However, giving Plaintiffs' Complaint a liberal reading, Plaintiffs do later, in their Section 1983 claim, generally allege a violation of the Pennsylvania bribery statute without pleading any facts in support of that allegation.  *See* ¶ 94 of Exhibit A.  The Pennsylvania statute on bribery, 18 Pa. C.S. § 4701(a), states that:

> A person is guilty of bribery, a felony of the third degree, if he offers, confers or agrees to confer upon another, or solicits, accepts, or agrees to accept from another:
>
> (1) any pecuniary benefit as consideration for the decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter by the recipient;
>
> (2) any benefit as consideration for the decision, vote, recommendation or other exercise of official discretion by the recipient in a judicial, administrative or legislative proceeding; or
>
> (3) any benefit as consideration for a violation of a known legal duty as public servant or public official.

---

[3] Although Plaintiffs list state law bribery as a predicate act in ¶ 85(a) of Exhibit A, Plaintiffs do not identify the conduct of Moving Defendants which allegedly gives rise to a claim for bribery under state law.  Plaintiffs do not cite to the Pennsylvania bribery statute, except generally under their Section 1983 allegations, and even there do not allege any conduct which purportedly violated that statute.  As will be discussed *infra*, the conduct Plaintiffs seem to suggest pertains to bribery, which Plaintiffs allege violate 65 Pa. C.S. § 1101, *et seq.*, in fact pertains only to improper influence and do not give rise to a predicate act.

18 Pa. C.S. § 4701(a) (1972).  As will be discussed more thoroughly below, Plaintiffs have failed to adequately plead a violation of this statute.

Plaintiffs also allege various violations of 65 Pa. C.S. § 1101, *et seq.*, throughout their Complaint.  *See* ¶¶ 61-66 of Exhibit A.  It is not clear why Plaintiffs cite to these irrelevant provisions, but perhaps Plaintiffs incorrectly believe these provisions also fall under state law regarding bribery.  Such belief is incorrect.  While 18 Pa. C.S. § 4701 clearly defines bribery, 65 Pa. C.S. § 1103 restricts "seeking improper influence" and "accepting improper influence," and nowhere refers to bribery.  *See* 65 Pa. C.S. § 1103 (1998).  Seeking improper influence is not bribery and is not a violation of state law giving rise to a predicate act as defined by 18 U.S.C. § 1961(1)(A).  Plaintiffs' allegations with respect to § 1101, *et seq.* should be disregarded as irrelevant to the causes of action alleged.

Second, Plaintiffs cannot allege that a predicate act of federal bribery occurred because the federal bribery statute applies only to bribery of federal officials, and there is no allegation that any federal officials were involved in the conduct at issue here.  18 U.S.C. § 201 applies to bribery of a "public official," defined as a:

> Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror.

18 U.S.C. § 201(a)(1) (1994).  The only public officials identified by Plaintiffs are Mayor Linden and Commissioner Bail, neither of whom is a federal public official as defined by this statute.  Plaintiffs have not, and could not, allege that any public officials, as defined by this statute, were involved in any of the conduct alleged.  Thus, Plaintiffs cannot rely on federal bribery as giving rise to a predicate act for their RICO claims.

11

Third, Plaintiffs allege predicate acts in the form of mail fraud and wire fraud.  *See* ¶ 85(c)-(d) of Exhibit A.  Mail fraud occurs when a person: (1) devised or intended to devise any scheme or artifice (a) to defraud or (b) to obtain money or property by means of false or fraudulent pretenses, representations or promises; and (2) for the purpose of executing such scheme or artifice or attempting so to do, (3) places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service .   18 U.S.C. § 1341 (2008).  Wire fraud occurs when a person (1) devised or intended to devise a scheme or artifice (a) to defraud, or (b) to obtain money or property by means of false or fraudulent pretenses, representations or promises; and (2) for the purpose of executing the scheme or artifice or attempting to do so, (3) knowingly caused to be transmitted by means of wire communications in interstate commerce, writings, signs, and signals.  18 U.S.C. 1343 (2008); In re Lowry, 78 A.2d 1276, 1279 (Pa. Commw. 2013).

Thus, two necessary elements of a mail or wire fraud charge are:  "(a) a scheme to defraud, and (2) a mailing or wire in furtherance of that scheme."  Anulli v. Panikkar, 200 F.3d 189, 200 (3d Cir. 1999) (citation omitted).  A plaintiff must establish not only that a fraudulent scheme existed, but also that the defendant was a part of the scheme.  United States v. Pearlstein, 576 F.2d 531, 537 (3d Cir. 1978).  Thus, the plaintiff must prove specific intent to participate in the fraudulent scheme.  Id.  "[D]efendants must either have devised the fraudulent scheme themselves . . . or have willfully participated in it with knowledge of its fraudulent nature."  Id.  Intrastate use of the mails may be sufficient for mail fraud, but wire fraud requires interstate use of the wire.  Anulli, 200 F.2d at 200.  Finally, "[i]f mail and wire fraud are asserted as the basis for RICO liability, plaintiffs must plead with particularity the circumstances of the alleged fraud in order to place the defendant on notice of the precise misconduct with which they are charged,

and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Stoss v. Singer Fin. Corp., No. 08-5968, 2010 U.S. Dist. LEXIS 16514, *17 (E.D. Pa. Feb. 24, 2010).

> **3.   Plaintiffs Have Not Averred Facts to Suggest that Moving Defendants Committed any Predicate Acts Necessary to State a RICO Claim.**

Plaintiffs have not pled facts which, if true, state a claim for relief under RICO because Plaintiffs have not alleged that Moving Defendants committed any predicate acts.  Plaintiffs assert that the act of Global paying Commissioner Bail as a W-2 employee constituted bribery, mail fraud and wire fraud.[4]  This assertion is incorrect.

> **a.   Plaintiffs have not alleged facts which, if true, establish that Moving Defendants committed state or federal bribery.**

Plaintiffs' allegations with respect to state law bribery are wholly unclear on the face of their Complaint.  Plaintiffs baldly assert that Defendants participated in bribery in violation of Pennsylvania law, without citing to any Pennsylvania statutes within their RICO claim. However, giving Plaintiffs the benefit of the doubt, as discussed above, Plaintiffs cite to two Pennsylvania statutes on which they perhaps base their claim for state law bribery:  18 Pa. C.S. § 4701 and 65 Pa. C.S. § 1101, *et seq.*

As noted above, 18 Pa. C.S. § 4701 prohibits conferring or agreeing to confer: (1) any pecuniary benefit as consideration for the decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter by the recipient; (2) any benefit as consideration for the decision, vote, recommendation or other exercise of official discretion by

---

[4] Plaintiffs' allegation that it is illegal for Global to pay Commissioner Bail as a W-2 employee to provide security services during events at PPL Park is unfounded in the law.  In fact, police officers in this Commonwealth routinely work as private security guards as a second source of income.  *See* Chicarelli v. Plymouth Garden Apts., 551 F. Supp. 532, 540 (E.D. Pa. 1982) (Plymouth Township police officers employed as part-time security guards by apartment complex); Kaminski v. Mydatt Servs., No. 2:12-cv-363, 2012 U.S. Dist. LEXIS 79696, *8 (W.D. Pa. 2012) ("police officers around the country routinely work such jobs"); Nonnemaker v. Ransom, Civil No. 99-912, 1999 U.S. Dist. LEXIS 8108, *8-9 (E.D. Pa. 1999) (citing examples of off-duty police officers working as security guards).

the recipient in a judicial, administrative or legislative proceeding; or (3) any benefit as consideration for a violation of a known legal duty as public servant or public official.  §

4701(a).    Although a violation of this statute could be a predicate act, nowhere in Plaintiffs' Complaint do they allege that Moving Defendants committed any conduct in violation of this statute.  *See* Exhibit A.  The only time Plaintiffs refer to this state law on bribery is in their Section 1983 claim, wherein Plaintiffs allege:

> The Defendants knowingly violated settled Pennsylvania law . . .
> as set forth in the Pennsylvania Criminal Code at 18 Pa. C.S. §
> 4701, Bribery in Official and Political Matters. . . .

*See* ¶ 94 of Exhibit A.  Without actually identifying a single instance of conduct on the part of Moving Defendants that violates this statute, Plaintiffs cannot sufficiently plead a predicate act arising from a state law claim of bribery.

Furthermore, the additional statutes cited by Plaintiffs, 65 Pa. C.S. § 1101, *et seq.* refer exclusively to seeking or exercising improper influence, do not at all refer to bribery, and cannot form the basis of a predicate act under the RICO act.  Finally, Plaintiffs cannot allege that Moving Defendants committed federal bribery because Plaintiffs have not alleged the involvement of any federal public officials, as defined by 18 U.S.C. § 201.  Plaintiffs have not alleged facts which, if true, establish that Moving Defendants committed bribery as defined for a predicate act under RICO.

**b.  Plaintiffs have not alleged facts which, if true, establish that Moving Defendants committed mail fraud.**

Similarly, Plaintiffs have alleged no facts which would establish that Moving Defendants committed mail fraud.  Mail fraud requires (1) a scheme to defraud and (2) a mailing in furtherance of that scheme."  Anulli, 200 F.3d at 200 (3d Cir. 1999) (citation omitted).  Thus, an underlying requirement for an allegation of mail fraud is the occurrence of a fraud.  A claim for

fraud requires:  "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result."  Savitz v. Weinstein, 149 A.2d 110, 113 (Pa. 1959).   The recipient of the misrepresentation must be the plaintiff, and it must be that recipient plaintiff who justifiably relied thereon.  See Id.

 "In alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b) (2007).  To satisfy the particularity standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

Plaintiffs have not alleged that Moving Defendants made any misrepresentation to them, or that the mailing of paychecks to Commissioner Bail was done with knowledge of any misrepresentations or in furtherance of an ongoing fraud.  See Exhibit A.  Plaintiffs likewise do not allege that they relied on any representations made by Moving Defendants or made in connection with any fraud in which Moving Defendants participated.  See Exhibit A.  In fact, Plaintiffs do not allege that they relied on any representations whatsoever.  See Exhibit A.

Finally, any allegations by Plaintiffs which could even conceivably be interpreted to pertain to an allegation of fraud are not specific enough to survive the heightened pleading standard applicable to fraud claims.  Plaintiffs do, outside of their section on mail fraud, allege that:

> Defendants conspired to close Plaintiffs' parking lots by
> fraudulently representing, via public officials who were
> undisclosed employees of Defendants, that the lots were operating
> in violation of the law; by closing the lots in violation of
> Pennsylvania law; by fraudulently imprisoning and intimidating
> the customers of the Plaintiffs' parking lots with crime scene tape

> which was the property of the City of Chester; and by fraudulently
> holding out Police Commissioner Bails [sic] and his three top
> offices of the Chester City police department as acting on behalf of
> the City and people of Chester when they were in fact working on
> behalf of the Defendants' unlawful enterprise.

*See* ¶ 109 of Exhibit A.  However, Plaintiffs do not allege the date, time and place of the alleged

fraud, they do not allege the specific conduct performed, and they do not allege who performed

the fraudulent conduct.  Plaintiffs have wholly failed to "inject precision or some measure of

substantiation" into their fraud allegation.

Even if Moving Defendants did mail paychecks to Commissioner Bail, this allegation

alone does not adequately plead that Moving Defendants made any misrepresentation or mailed

the checks with knowledge of or in furtherance of an ongoing fraud, nor does it suffice to allege

that Plaintiffs relied on any representation.  All this fact shows is that Global paid Commissioner

Bail to provide security during events at PPL Park.  Without more, this does not adequately plead

the existence of an underlying fraud, and does not give rise to a RICO claim based on mail fraud.

### c. Plaintiffs have not alleged facts which, if true, establish that Moving Defendants committed wire fraud.

Finally, Plaintiffs have not alleged that Moving Defendants knowingly caused anything

to be transmitted "by means of wire communications in interstate commerce," as required to state

a claim for wire fraud under 18 U.S.C. § 1983.  In addition to failing to adequately plead the

existence of and Moving Defendants' participation in a fraudulent scheme, Plaintiffs have also

not alleged use of wire communications or any conduct on the part of Moving Defendants in

interstate commerce.  Plaintiffs' allegation with respect to wire fraud is that:

> The racketeering activity was made possible in part by the
> Defendants' illicit payments made via U.S. mail and interstate
> wires to Defendant Police Commissioner Bail and his three top
> police officers, who at all times during the more than twenty-four
> month long conspiracy were W-2 employees of Global Spectrum,

16

> in violation of Pennsylvania law and the Chester City Home Rule
> Charter.

*See* ¶ 79 of Exhibit A.  This allegation is simply a legal conclusion that Defendants used

interstate wires, without any facts to support the conclusion.  Plaintiffs do not even allege that

Moving Defendants and Commissioner Bail are located in different states.  *See caption* of

Exhibit A (Global Spectrum located at 3601 S. Broad Street, Philadelphia, PA 19148 and

Commissioner Bail of the City of Chester located at 1 Fourth Street, Chester, PA).

Notwithstanding Plaintiffs' failure to allege any use of interstate wires, it is furthermore highly

unlikely that interstate wires were used for a company, located in Pennsylvania, to pay a person,

also a resident of Pennsylvania, for work performed in Pennsylvania.

A plaintiff must plead with particularity the circumstances of an alleged wire fraud, and

Plaintiffs here have not done so because they have failed to allege a single use of the interstate

wires.  Because Plaintiffs have not alleged facts which, if true, give rise to predicate acts under

RICO, Plaintiffs' RICO claim against Moving Defendants should be dismissed pursuant to

Federal Rule of Civil Procedure 12(b)(6).

## 4. Plaintiffs Have Not Alleged Facts Which, if True, Establish that Moving Defendants Participated in a "Pattern of Racketeering Activity," as Required to State a RICO Claim.

Plaintiffs have not alleged facts which, if true, establish that Moving Defendants

participated in a "pattern of racketeering" activity, as required to state a RICO claim.  A pattern

of racketeering activity requires more than just the commission of two predicate acts.  Kehr

Packages, Inc., 926 F.2d at 1412.  The plaintiff must show that the racketeering acts are related

"and that they amount to or pose a threat of continued criminal activity."  Id.  Thus, a pattern

requires both "relatedness" and "continuity."  Id.

The test for relatedness "focuses on whether the alleged predicate acts 'are interrelated by distinguishing characteristics and are not isolated events.'" Id. (citing H.J. Inc., 492 U.S. 229).

Continuity, on the other hand, refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id.  "A short-term scheme threatening no future criminal activity will not suffice." Id.  "When the acts alleged occur in a specific, closed period of time, that period must be substantial." Battiste v. Arbors Mgmt., 522 Fed. Appx 171, 172-73 (3d Cir. ).  Courts in this Circuit have declined to provide a "litmus test" for what length of time would be "substantial," but have held that one year is too short, while a year and a half may be long enough.  See, e.g., Hughes v. Consol-Pa. Coal Co., 945 F.2d 594, 611 (3d Cir. 1991) (twelve months is too short); Battiste, 522 Fed. Appx. at 173 (ten months is too short); but see United States v. Pelullo, 964 F.2d 193, 209 (3d Cir. 1992) (nineteen months may be sufficient to satisfy continuity requirement).

Here, Plaintiffs have not alleged related and ongoing conduct on the part of Moving Defendants, as required to show a pattern.  The incidents Plaintiffs allege constitute the predicate acts are as follows:

> The City of Chester's actions in closing Plaintiffs' parking lots on April 28, 2012, March 2, 2013, March 16, 2013, April 13, 2013, May 4, 2013, and in trespassing onto Plaintiffs' property and imprisoning Plaintiffs' customers in the Plaintiffs' lots during the Union game on March 15, 2014, were overt acts in furtherance of the Defendants' conspiracy which utilized the U.S. mails and interstate wires, whereby the Defendant Commissioner of the Chester City Police, in exchange for Defendant Global Spectrum's payments, made to him in exchange for the use of his official office, city employees, vehicles, and authority, by which the co-conspirators oppressed and illegally confiscated Plaintiffs' property and injured their business, without notice or a due process hearing, constitute a violation of the RICO Act. . . .

See ¶ 85 of Exhibit A.  The events which allegedly occurred on the dates mentioned are as follows:

18

1. On April 26, 2012, in advance of the April 28, 2012 Union soccer game, Chester City Planner, William Payne, issued a Cease and Desist Order to Plaintiffs stating that the way they operated their lots posed a significant danger to public safety.  *See* ¶ 26 of Exhibit A.

2. On March 2, 2013, while a Declaratory Judgment Action was pending in the Court of Common Pleas of Delaware County, Commissioner Bail directed his top three police department officers to use members of the Chester City police force to close Plaintiffs' parking lots by blocking streets and cordoning off entrances to the lots with crime tape, at the behest of Moving Defendants and the Keystone Defendants.  On this same date, Scanlon allegedly placed Chester City barricades across entrances to Plaintiffs' lots.  *See* ¶ 46 of Exhibit A.

3. On March 16, 2013, while a Declaratory Judgment Action was pending in the Court of Common Pleas of Delaware County, Commissioner Bail directed his top three police department officers to use members of the Chester City police force to close Plaintiffs' parking lots by blocking streets and cordoning off entrances to the lots with crime tape, at the behest of Moving Defendants and the Keystone Defendants.  On this same date, Scanlon allegedly placed Chester City barricades across entrances to Plaintiffs' lots.  *See* ¶ 46 of Exhibit A.

4. On April 13, 2013, while a Declaratory Judgment Action was pending in the Court of Common Pleas of Delaware County, Commissioner Bail directed his top three police department officers to use members of the Chester City police force to close Plaintiffs' parking lots by blocking streets and cordoning off entrances to the lots with crime tape, at the behest of Moving Defendants and the Keystone Defendants.  On this same date, Scanlon allegedly placed Chester City barricades across entrances to Plaintiffs' lots.  *See* ¶ 46 of Exhibit A.

5. On May 4, 2013, while a Declaratory Judgment Action was pending in the Court of Common Pleas of Delaware County, Commissioner Bail directed his top three police department officers to use members of the Chester City police force to close Plaintiffs' parking lots by blocking streets and cordoning off entrances to the lots with crime tape, at the behest of Moving Defendants and the Keystone Defendants.  On this same date, Scanlon allegedly placed Chester City barricades across entrances to Plaintiffs' lots.  *See* ¶ 46 of Exhibit A.

6. On March 15, 2014, just after half time during the Union soccer game, Commissioner Bail, acting on behalf of all Defendants, caused Chester City police officers to barricade every exit and parking row of Plaintiffs' parking lots with wooden barricades and crime scene tape.  *See* ¶ 56 of Exhibit A.

These allegations, even if true, do not constitute a related and continuous pattern of racketeering activity as required under RICO.  The first allegation, that the City Planner issued a Cease and Desist Order, cannot constitute a predicate act performed by Moving Defendants or any Defendants to this lawsuit because (1) the issuance of a Cease and Desist Order does not fall under any of the predicate acts as defined in the RICO statute, and (2) Plaintiffs do not allege that Moving Defendants have the authority to direct the City Planner to act or that Moving Defendants did direct the City Planner to act.  *See* 18 U.S.C. § 1961; *see also* Exhibit A. Moreover, the lawful activities of the City Planning office are not related to any conduct by the Defendants as directed to the Plaintiffs' parking lots, and, since this occurred nearly one year before any of the other alleged activities, does not appear to be part of any closed period of related conduct or a continuous operation.

The next four events, all of which allege that Defendants caused Plaintiffs' parking lots to be closed on four separate occasions in a three month period, likewise do not give rise to a pattern of racketeering activity.  Plaintiffs seem to suggest that because these alleged closures occurred while a Declaratory Judgment action was pending, they are somehow unlawful.  This is incorrect.  As Plaintiffs' allege, on June 12, 2012, Plaintiffs and the City of Chester entered into a Stipulated Order which stated that the Plaintiffs could use their properties as temporary parking facilities pursuant to the Agreement between the parties, dated March 14, 2012.  *See* ¶¶ 40-41 of Exhibit A and Exhibit F (Stipulated Order) to Exhibit A (Plaintiffs' Complaint).  The Stipulated Order further provided that the Plaintiffs would revive their Applications for Variance before the Chester City Zoning Hearing Board.  *See* Exhibit F (Stipulated Order) to Exhibit A (Plaintiffs' Complaint).  The March 14, 2012 Agreement, however, granted Temporary Off-street Parking

Permits to Plaintiffs to operate their parking lots only during the 2012 calendar year.  *See* ¶ 23 of Exhibit A.

Thus, neither the March 2012 Agreement nor the June 2012 Stipulated Order gave Plaintiffs the right to use their lots for parking beyond the year 2012.  *See* ¶¶ 23, 40-41 of Exhibit A and Exhibit F (Stipulated Order) to Exhibit A (Plaintiffs' Complaint).  Moreover, the June 2012 Stipulated Order obligated Plaintiffs to revive their Applications for Variance.  *See* Exhibit F (Stipulated Order) to Exhibit A (Plaintiffs' Complaint).  Plaintiffs do not allege that they did revive their applications or that they were in any other way granted legal authority to operate their parking lots in 2013, on the dates when they allege Commissioner Bail and other police officers closed their parking lots.  *See* Exhibit A.  The fact that a Declaratory Judgment Action was pending, and had not yet been decided, did not grant Plaintiffs the right to operate their parking lots.  Thus, Plaintiffs have alleged no facts which, even if true, would adequately plead that the conduct of Commissioner Bail in closing the lots on March 2, March 16, April 13 or May 4, 2013 was in any way unlawful.  Rather, this conduct would simply be Commissioner Bail performing his duties to enforce the law as a Chester City Police Commissioner.

The last allegation is notably different in character than the prior allegations and therefore not even a part of the same alleged scheme.  If Plaintiffs' allegation that Commissioner Bail barricaded all exits from their lots on March 15, 2014 is true, this action would have occurred after Plaintiffs' Petition for Injunctive Relief was granted on May 13, 2013, and after the Delaware County Court of Common Pleas issued an Order instructing the City of Chester to immediately cease and desist from interference with Plaintiffs' lawful operation of their parking facilities.  *See* ¶¶ 50-53 of Exhibit A.  This action is different than prior allegations because there is no allegation that Defendants prohibited customers from parking in Plaintiffs lots and,

moreover, it is the only allegation pertaining to a time period in which Plaintiffs may have been permitted under the law to operate their parking lots.

Plaintiffs have not sufficiently pled that any conduct on the part of Moving Defendants was continuous, as required for a pattern of racketeering activity.  Even assuming all of Plaintiffs' allegations are true, and even if the four alleged closures of Plaintiffs' lots in 2013 were unlawful, the pattern of activity Plaintiffs allege which can arguably be considered related for RICO purposes only took place from March until May 2013.  Three months is not a sufficient length of time to satisfy the continuity requirement.  See Battiste, 522 Fed. Appx at 173.  Even if the last alleged barricade of the lots, on March 15, 2014, is considered related, the period of time would only be one year, which is still not sufficient.  See Hughes, 945 F.2d at 611 (twelve months is not a sufficient length of time to satisfy the continuity requirement).

Thus, even if all of Plaintiffs' factual allegations as to their RICO claim are true, they have not plead sufficient facts to suggest continuity, as required for a pattern of racketeering activity.  Because Plaintiffs have not pled a pattern of racketeering activity on the part of Moving Defendants, their RICO claim fails.

### D.  **Plaintiffs Have Failed to Plead Sufficient Factual Allegations against Moving Defendants to Give Rise to a Claim for Relief under 42 U.S.C. § 1983.**

Plaintiffs have failed to plead sufficient factual allegations against Moving Defendants to give rise to a claim for relief until 42 U.S.C. § 1983.  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

42 U.S.C. § 1983 (1996).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citation omitted).

Thus, to state a claim under Section 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  Section 1983 creates no substantive rights, but rather allows a plaintiff to vindicate violations of rights created by the United States Constitution or federal law.  Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979); Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  "To state an adequate claim for relief under [§ 1983], a plaintiff must allege that a defendant, acting under the color of state law, subjected her or caused her to be subjected to the deprivation of her Constitutional or federal rights. § 1983. A plaintiff must allege that each defendant 'individually participated in the alleged constitutional violation or approved of it.'" Karchnak v. Swatara Twp., 2008 U.S. Dist. LEXIS 9950 (M.D. Pa. 2008).

A key element of a claim under Section 1983 is that the defendant must be a state actor. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982) (the "party charged with the deprivation must be a person who may fairly be said to be a state actor").   A person can be a state actor "because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Id.  "[A] private person is considered a state actor if he acted together with or has obtained significant aid from state officials." Edwards v. City of Easton, No. 08-cv-1524-JF, 2009 U.S. Dist. LEXIS 82885, *6 (E.D. Pa. 2009) (citation omitted) ("[a] private citizen does not become a state actor

by merely providing information to a police officer, but if a police officer acts at the request of a private individual, then § 1983 liability *may* attach" (emphasis added)).

Finally, a plaintiff who sues under Section 1983 based upon a violation of due process must provide sufficient evidence that: 1) he was denied life, liberty or property and 2) the denial occurred without due process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000); Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984). Procedural due process requires allegations which, if true, would show that Plaintiffs were denied some process which they were owed. In determining what process is owed, courts are to consider three factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of the interest through the procedure employed, and the probable value of additional procedural safeguards, and (3) the government's interest. Ritter v. Cohen, 797 F.2d 119, 122 (3d Cir. 1986) (citing Mathews v. Eldridge, 424 U.S. 319 (1976)).

Substantive due process, on the other hand, requires proof that "the [defendant's] actions were not rationally related to a legitimate government interest or were in fact motivated by bias, bad faith or improper motive." Doby v. DeCrescenzo, 171 F.3d 858, 871 n. 4 (3d Cir. 1999). To adequately allege a violation of substantive due process, a plaintiff must allege "conscience-shocking behavior." UA Theatre Circuit v. Twp. of Warrington, 316 F.3d 392, 400-02 (3d. Cir. 2003). "What "shocks the conscience" is "'only the most egregious official conduct.'" Id. at 400. The "shocks the conscience" standard applies even in land use cases. Miller v. Pocono Ranch Lands Prop. Owners Ass'n, 557 Fed. Appx. 141, 144 (3d Cir. 2014) (unpublished) (citing Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004)). Conduct such as: zoning officials misapplying subdivision requirements, pursuing unannounced and unnecessary inspection and enforcement actions, delaying permits and approvals, and improperly increasing

tax assessments does not meet this standard and is not a violation of substantive due process. Eichenlaub, 385 F.3d at 286.

"[A] civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." Goldhaber v. Higgins, 2007 U.S. Dist. LEXIS 72892 (W.D. Pa. 2007). Here, Plaintiffs have failed to sufficiently plead that Moving Defendants are subject to Section 1983 as state actors, or the conduct, time, or place of Moving Defendants' alleged violations of Plaintiffs' civil rights.  Plaintiffs allege that Moving Defendants, along with the rest of Defendants, "illegally depriv[ed] Plaintiffs of the lawful use of their business property without due process of law." *See* ¶ 32 of Exhibit A.  Plaintiffs do not allege how Moving Defendants, a private entity and a private citizen, became state actors, as required by Section 1983.  The fact that Global paid Commissioner Bail for *private* security that Commissioner Bail provided to PPL Park does not, in itself, constitute state action.  Plaintiffs have not alleged facts to show that Moving Defendants directed Commissioner Bail or any other state actor to violate their rights. Thus, Plaintiffs have failed to establish that Moving Defendants are state actors and thus, Moving Defendants cannot be liable under Section 1983.

Moreover, Plaintiffs have not alleged any conduct on the part of Moving Defendants that would constitute a violation of Plaintiffs' civil rights.  Plaintiffs do not explain whether they allege violations of procedural or substantive due process.  If procedural, Plaintiffs have not alleged what process they believe was owed them but denied.  In reality, Plaintiffs made extensive use of the procedure available to them, by pursuing various appeals of notice violations, applying to the Zoning Board, and instituting a Declaratory Judgment action.  *See generally* Exhibit A.  Plaintiffs have not adequately alleged that any procedure should have been

afforded them but was denied, and they have certainly not alleged Moving Defendants' involvement in any violations of their procedural due process.

Moreover, Plaintiffs have not alleged conscience-shocking behavior, as required to state a claim for violation of substantive due process.  This is a land-use case, in which Plaintiffs raise various claims arising from the alleged interference by Defendants with the use of Plaintiffs' land as parking lots.  *See* Exhibit A.  The conduct complained of here, that Defendants either issued or caused others to issue violation notices and cease and desist orders and that Defendants either closed or directed the closure of Plaintiffs' parking lots, is akin to that in Eichenlaub, where the Court of Appeals for the Third Circuit found that misapplying subdivision requirements, pursuing unannounced and unnecessary inspection and enforcement actions, and delaying permits and approvals did not shock the conscience and did not violate plaintiff's substantive due process rights.  Likewise, here Plaintiffs have alleged no conscience-shocking behavior on the part of Moving Defendants.

Because Plaintiffs have not alleged facts which, if true, would state a claim for relief under § 1983, this claim should be dismissed as to Moving Defendants.

Moreover, because Plaintiffs do not state a claim for relief under § 1983, they are not entitled to attorneys' fees under § 1988.

### E.  **Plaintiffs Have Failed to Plead Sufficient Factual Allegations against Moving Defendants to Give Rise to a Claim for Relief under their State Law Claims.**

Plaintiffs have failed to plead sufficient factual allegations against Moving Defendants to state a claim for relief under any of their state law claims, and thus Plaintiffs' Complaint should be dismissed as to Moving Defendants.

1.  **Plaintiffs Have Failed to Plead Facts Which, if True, Would State a Claim for Relief Against Moving Defendants for Civil Conspiracy.**

Plaintiffs have failed to plead facts which, if true, would state a claim for relief against Moving Defendants for civil conspiracy. "In order for a claim of civil conspiracy to proceed, a plaintiff must 'allege the existence of all elements necessary to such a cause of action.'" Lackner v. Glosser, 892 A.2d 21, 34 (Pa. Super. 2006).

First, a plaintiff must allege a separate underlying tort giving rise to the claim for conspiracy. "[A] claim for civil conspiracy does, in fact, require proof of a separate underlying tort as a predicate." Commonwealth v. TAP Pharm. Prods., 36 A.3d 1197, 1289 (Pa. Commw. 2011) (*vacated on other grounds*) ("The rule that civil conspiracy may not exist without an underlying tort is a common one. Indeed, we are unaware of any jurisdiction that recognizes civil conspiracy as a cause of action requiring no separate tortious conduct.") (citing Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405-06 (3d Cir. 2000)). "[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." Phillips v. Selig, 959 A.2d 420, 437 (Pa. Super. 2008).

Second, a plaintiff must allege the elements of a civil conspiracy claim. A claim for civil conspiracy requires proof of: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage. Id. at 437. As to the agreement for a common purpose to do an unlawful act, "[p]roof of malice, *i. e.*, an intent to injure, is essential in proof of a conspiracy." Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979). As to the over act element, a conspiracy is not actionable

"until 'some overt act is done in pursuance of the common purpose or design … and actual legal damage results." Lackner, 892 A.2d at 34-35.

"[A] bare assertion of conspiracy will not suffice" to survive a motion to dismiss. Twombly, 550 U.S. at 555.  Here, Plaintiffs fail to state a claim for civil conspiracy as to Moving Defendants.  First, Plaintiffs' claim fails because they have not pled the occurrence any underlying tort, as required to state a claim for civil conspiracy. *See* ¶¶ 106-107 of Exhibit A. Second, Plaintiffs' claim fails because they have not alleged the elements of conspiracy. Plaintiffs allege that all Defendants "entered into a conspiracy to violate Pennsylvania law in order to obtain Plaintiffs' parking customers and to eventually force Plaintiffs out of business so that they could obtain Plaintiffs' property at less than fair market value." *See* ¶ 106 of Exhibit A. However, these assertions contain no factual allegations as to Moving Defendants.  Plaintiffs have not alleged any facts that would suggest an agreement among Moving Defendants and any another party, Plaintiffs have not alleged any facts that would suggest malice on the part of Moving Defendants, and Plaintiffs have not alleged any overt acts in furtherance of the alleged conspiracy. *See* ¶¶ 106-107 of Exhibit A.

Moreover, Plaintiffs have not alleged that Moving Defendants have any interest in the lots where Plaintiffs' customers could have parked or that Moving Defendants have made any attempt to acquire Plaintiffs' property. *See* Exhibit A.  Moving Defendants manage PPL Park, and have no interest in the surrounding parking lots.  Plaintiffs do not allege otherwise. *See* Exhibit A.  Plaintiffs seem to simply allege that because Global paid Commissioner Bail to provide security at PPL Park, a conspiracy to put Plaintiffs out of business is inferred.  However, a plaintiff's mere assertion that defendants entered into an unlawful agreement is a legal conclusion and is not entitled to an assumption of truth. Iqbal, 556 U.S. at 680.  Plaintiffs have

alleged no facts to suggest an underlying tort giving rise to a claim for civil conspiracy, or an unlawful agreement among Moving Defendants and the other Defendants, or any overt acts done in support of any conspiracy, and therefore cannot state a claim for relief for civil conspiracy as to Moving Defendants.

### 2.   Plaintiffs Have Failed to Plead Facts Which, if True, Would State a Claim for Relief Against Moving Defendants for Fraud.

Plaintiffs have failed to allege facts which, if true, would state a claim for relief against Moving Defendants for fraud.  To state a claim for fraud in Pennsylvania, a plaintiff must allege: "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the plaintiff recipient upon the misrepresentation and (5) damage to the recipient as the proximate result." Savitz v. Weinstein, 149 A.2d 110, 113 (Pa. 1959).  The recipient of the misrepresentation must be the plaintiff, and it must be that recipient plaintiff who justifiably relied thereon.  See Id.  Plaintiffs have not alleged a single one of these elements as to Moving Defendants.

Plaintiffs' allegations as to fraud are that:

> Defendants conspired to close Plaintiffs' parking lots by fraudulently representing, via public officials who were undisclosed employees of Defendants, that the lots were operating in violation of the law; by closing the lots in violation of settled Pennsylvania law; by fraudulently imprisoning and intimidating customers of the Plaintiffs' parking lots with crime scene tape which was the property of the City of Chester; and by fraudulently holding out Police Commissioner Bails [sic] and his three top officers of the Chester City police department as acting on behalf of the City and people of Chester when they were in fact working on behalf of the Defendants' unlawful enterprise.

See ¶ 109 of Exhibit A.  The only portion of this paragraph that could possibly be directed at Moving Defendants is the employment of "public officials," namely, Commissioner Bail.  Plaintiffs do not allege that Moving Defendants made a misrepresentation, intended that

Plaintiffs rely on the misrepresentation, or that Plaintiffs did justifiably rely on a misrepresentation by Moving Defendants.  To state a claim for fraud, a plaintiff must allege that the plaintiff relied on the misrepresentation.  At most, Plaintiffs here allege that others besides Plaintiffs relied on misrepresentations in closing Plaintiff's lots.  This is not sufficient for Plaintiffs to state a claim for fraud.  Because Plaintiffs have not alleged facts which, if true, would state a claim for relief against Moving Defendants for fraud, this claim should be dismissed as to Moving Defendants.

### 3. Plaintiffs Have Failed to Plead Facts Which, if True, Would State a Claim for Relief Against Moving Defendants for Trespass.

Plaintiffs have failed to plead facts which, if true, would state a claim for relief against Moving Defendants for trespass.  A cause of action for trespass requires proof that defendant entered land in the possession of another without a privilege or authorized or directed someone else to do so.  Kopka v. Bell Tel. Co., 91 A.2d 232, 235 (Pa. 1952).  Here, Plaintiffs broadly allege that all Defendants caused City employees and police officers to enter Plaintiffs' land. Plaintiffs make no allegations specifically as to Moving Defendants, and Plaintiffs do not allege how any of the Defendants apparently caused the City to trespass.  Plaintiffs also do not allege any damages suffered as a result of the trespass.  Because Plaintiffs have failed to plead that Moving Defendants trespassed or facts which would show Moving Defendants directed someone else to trespass, and have not alleged damages arising from a trespass, this claim fails and should be dismissed as to Moving Defendants.

### 4. Plaintiffs Have Failed to Plead Facts Which, if True, Would State a Claim for Relief Against Moving Defendants for Intentional Interference with Contractual Relations.

Plaintiffs have failed to plead facts which, if true, would state a claim for relief against Moving Defendants for intentional interference with contractual relations.  To state a claim for

intentional interference with contractual relations, a plaintiff must prove:  (1) the existence of a contractual relation between the plaintiff and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation; (3) the absence of privilege or justification on the part of the defendant; and (4) actual legal damage as a result of the defendant's conduct.  Crivelli v. General Motors Corp., 215 F.3d 386, 394 (3d Cir. 2000) (citing Strickland v. Univ. of Scranton, 700 A.2d 979, 985 (Pa. Super. 1997)).

Here, Plaintiffs do not allege the existence of any contractual relation with which they claim Moving Defendants interfered.  *See* Exhibit A.  In fact, Plaintiffs' entire 118 paragraph Complaint does not refer once to the existence of any contract.  Because Plaintiffs have not even pled that a contract existed, they have further failed to plead that Moving Defendants purposefully acted, intending to harm the contractual relation, or that the conduct on the part of Moving Defendants was not privileged.  To the extent that we can assume Plaintiffs allege intentional interference with a contract between them and their customers, no such contract exists until after a customer pays for the parking, and Plaintiffs do not allege that any interference occurred, which caused them damages, after a contract was in place.

The only factual allegation against Moving Defendants which may relate to contracts between Plaintiffs and third parties is that Global made payments to Commissioner Bail for security services provided during Union soccer games.  Moving Defendants were certainly privileged to pay Commissioner Bail for his work performed, and therefore this conduct cannot give rise to a claim for intentional interference with contractual relations.  Because Plaintiffs have failed to allege facts which, if true, would state a claim for relief for intentional interference with contractual relations, this claim should be dismissed as to Moving Defendants.

**F.** **Alternatively, Plaintiffs Should be Required to Make a More Definite Statement as to the Alleged Conduct of Moving Defendants Which They Claim Gives Rise to Their Cause of Action.**

Plaintiffs have not pled conduct on the part of Moving Defendants which would give rise to their claims, but rather have grouped all Defendants together when raising their causes of action. As such, Plaintiffs should be required to make a more definite statement as to the claims directed towards Moving Defendants specifically, and the alleged conduct of Moving Defendants which Plaintiffs claim gives rise to those causes of action. Federal Rule of Civil Procedure 12(e) provides: "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e) (2009).

Plaintiffs' only factual allegations against Moving Defendants are that Global paid Commissioner Bail $400 per event for his provision of security during Union soccer games and that Scanlon moved a police barricade in Plaintiffs' parking lot. Plaintiffs do not identify when this conduct occurred, how this conduct gives rise to their causes of action, or what involvement, if any, Moving Defendants had in the numerous other allegations Plaintiffs seem to assert against Moving Defendants without any basis in fact. It is impossible for Moving Defendants to respond to Plaintiffs' allegations without more information as to the time, place and context of the allegations and without specific detail as to how Plaintiffs allege Moving Defendants were involved in the conduct alleged.

Specifically, Moving Defendants cannot prepare a defense to Plaintiffs' RICO, civil rights, and state law claims without specific factual allegations relating to the elements Plaintiffs must show to state those claims. Moving Defendants are entitled to specific factual pleadings as to the predicate acts which Plaintiffs allege occurred, and as to Moving Defendants' alleged

32

participation in a related and continuous pattern of racketeering activity.  Moving Defendants are also entitled to learn how Plaintiffs believe Moving Defendants became state actors and what process Plaintiffs aver they were denied in violation of Section 1983.  Finally, Moving Defendants are entitled to learn what conduct Plaintiffs allege consisted each required element of their state law claims.  Plaintiffs' limited factual averments against Moving Defendants, coupled with their vague allegations apparently directed to all Defendants, are not sufficient to allow Moving Defendants to prepare a defense to Plaintiffs' Complaint.

This Motion for a More Definite Statement is properly presented because Plaintiffs' allegations against Moving Defendants are so vague and ambiguous that Moving Defendants cannot adequately respond thereto.

## V.    <u>RELIEF</u>

For the reasons stated above, Moving Defendants respectfully request that this Honorable Court grant their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismiss Moving Defendants from this action with prejudice.  Alternatively, Moving Defendants respectfully request that this Honorable Court grant their Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e).

Respectfully submitted,

MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN

   /s/ Alesia S. Sulock
ARTHUR W. LEFCO, ESQUIRE
ALESIA S. SULOCK, ESQUIRE
2000 Market Street, Suite 2300
Philadelphia, PA 19103
P: 215-575-2600
F: 215-575-0856
DATE:  September 9, 2014                        awlefco@mdwcg.com
01/10814960.v1                                          assulock@mdwcg.com
                                                                ID Nos.: 12909/314071

33